UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MAURICE BRANCH, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | No. 3:06cv0074 AS |
| | ) | |
| D. BRUCE JORDAN, | ) | |
| | ) | |
| Respondent | ) | |

*MEMORANDUM, OPINION AND ORDER*

On or about January 26, 2006, *pro se* petitioner, an inmate at the Westville Correctional Facility (WCF) in Westville, Indiana, filed a petition seeking relief under 28 U.S.C. §2254. The Response filed on behalf of the respondent by the Attorney General of Indiana on August 22, 2006, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). An in camera document filed on August 30, 2006 has been examined by this court. The petitioner filed a Traverse on October 5, 2006, which this Court has carefully examined.

The petitioner is a convicted felon serving a sentence imposed by a court in the State of Indiana. At the time of the filing of this petition he was incarcerated in the WCF in this district. He was the subject of a prisoner disciplinary proceeding designated as WCU 05-08-1105 and WCU 05-08-1106.

The findings related to criminal gang activity and aiding in a murder. The sanctions

included disciplinary segregation which does not implicate a liberty interest under *Sandin v. Conner*, 515 U.S. 472 (1995). The sanctions also included an earned credit time deprivation of 180 days and a demotion in credit class from credit class I to credit class II which does implicate a liberty interest under *Wolff v. McDonnell*, 418 U.S. 539 (1974). Those sanctions just described were for the finding about gang activity. There were further sanctions with regard to aiding in a murder, which also included disciplinary segregation and an earned credit time deprivation of 360 days and a demotion from credit class II to credit class III. There has been compliance here with the procedural demands of *Wolff*, and the evidence here is sufficient under *Superintendent, Mass. Corr. Institution at Walpole v. Hill*, 472 U.S. 445 (1985), and under the "some evidence" test applicable in this circuit. *See Webb v. Anderson*, 224 F.3d 649 (7th Cir.), *cert. denied*, 531 U.S. 999 (2000), *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717 (7th Cir. 1996).

The Attorney General has placed before this Court a series of documents designated A through J, and Exhibits 1 through 11 following Exhibit J, which explicate in great detail the proceedings involved. Certainly this court is very familiar with the so-called right to call witnesses as enunciated by Judge Bauer in *Forbes v. Trigg*, 976 F.2d 308 (7th Cir. 1992), *cert. denied*, 507 U.S. 950 (1993). However, the request for witnesses must be made in a timely fashion. *See Mayers v. Anderson*, 93 F. Supp. 2d 962 (N.D. Ind. 2000). As a generalized proposition, it appears that prisoners in this species of proceeding may have some limited right to exculpatory evidence. There remains a question of whether the full panoply

2

of constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963) is available in these proceedings, but that question does not need to be decided here.

There are some touchy technicalities with regard to videotapes which has been the subject of considerable review in this circuit. The way it seems to come down is that prisoners apparently have the right under this procedure to have the CAB which is considering the charge in question review the videotapes in question, but there is not a right for the prisoners themselves to view the tapes. *See Hoskins v. McBride*, 202 F.Supp. 2d 839 (N.D. Ind. 2002). In this proceeding, the CAB did in fact review the tape in question and issued a written summary of the tape.

Another issue in this case has to do with the CAB's considering confidential informants which was covered some 20-plus years ago in *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir. 1985), *cert. denied*, 476 U.S. 1142 (1986), and a decade ago in *Whitford v. Boglino*, 63 F.3d 527 (7th Cir. 1995). After looking carefully at the material filed in camera, along with the discussion in the brief filed by the Attorney General on pages seven to nine, this court is convinced that there was no violation here of the due process clause of the Fourteenth Amendment of the Constitution of the United States.

Once again there is an argument advanced with regard to so-called double jeopardy which basically does not apply to this species of prisoner disciplinary proceedings. *See Rowold v. McBride*, 973 F.Supp. 829, 834 (N.D. Ind. 1997).

There is some difficulty for this petitioner in raising an issue here and now that was

3

not raised when the matter went before the Facility Head and when the process of administrative review was being had under *Markham v. Clark*, 978 F.2d 993 (7th Cir. 1992). The new claim now made for the first time was to the effect that the disciplinary board's written disposition of the reasons of finding guilt was inadequate. Clearly, this claim was not raised in the administrative proceedings that went to the Facility Head, and is therefore procedurally defaulted. Nonetheless, even if it is not procedurally defaulted, it appears to be without merit.

This court has no desire or intent to nitpick the work and filings here by this pro se petitioner. He does invoke *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994), which is a case appealing proceedings under 42 U.S.C. §1983 and not 28 U.S.C. §2254. There are significant differences between the petitions filed under 28 U.S.C. §2254 and those filed under 42 U.S.C. §1983. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973), and *Allen v. Duckworth*, 6 F.3d 458 (7th Cir. 1993), *cert. den.*, 114 S.Ct. 1106 (1994). In *Black*, it is also worthy of note that a strong dissent was lodged by Judge Manion as reflected in 22 F. 3d 1405-1409. So even under §1983, the case was a close one and is certainly not a binding precedent here. This court has also taken the trouble to revisit *Wells v. Israel*, 854 F.2d 995 (7th Cir. 1988). Here, Judge Manion was the author of the majority opinion, and this court does not conceive that when the totality of the record is considered here, the basic teaching of *Wells* has been violated. The result reached in *Wells* is consistent and compatible with the result reached here.

4

This court has also taken the trouble to revisit some rather complicated teaching regarding the various rules regarding access by prisoners to videotape context in prisoner disciplinary proceedings. Obviously one must look carefully at *Piggie v. Cotton,* 344 F.3d 674 (7th Cir. 2003), and *Piggie v. McBride*, 277 F.3d 922 (7th Cir. 2002). Of some further moment are the contents of an unpublished order entered October 9, 2003 by a panel of the Court of Appeals in a case designated as *Shroyer v. Cotton*, 80 Fed. Appx. 481 (7th Cir. 2003), as follows:

> At the heart of Mr. Shroyer's petition is his contention that he was denied the right to examine the videotape of the incident. However, he did not have an unlimited right to examine evidence, especially if doing so would compromise institutional safety or goals. *See Wolff,* 418 U.S. at 566; *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir.2002). Mr. Shroyer does not contend that examining the videotape would reveal that he did not traffick; rather his complaints are, alternatively, that the refusal to let him see the tape casts doubt on its existence, that the tape was improperly handled in the chain of custody, and that the CAB never actually viewed the video. Contrary to his assertions, the hearing report documents that the CAB viewed, considered, and relied upon the security tape in adjudicating his guilt. Chain of custody is not a significant factor here, *compare Webb*, 224 F.3d at 652-53, and since Mr. Shroyer does not even allege that the tape was exculpatory, we can find no error in denying him access to it, see *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (right to exculpatory evidence is qualified).
>
> We note that this result is not inconsistent with our recent decision in *Piggie v. Cotton*, 344 F.3d 674 (7th Cir.2003). In *Piggie* a CAB denied an inmate access to a videotape which recorded his cell extraction by several officers. *Id.* at 678. The CAB report was silent as to the tape's contents; however, a post-hearing report suggested that the tape might not inculpate the offender. Id. at 679. Because there was no apparent security concern and because there was a suggestion that the tape could have been exculpatory, we held that it was error for the district court not to make an in camera review of the tape in order to evaluate whether it was exculpatory or legitimately withheld for security or

5

> other reasons. *Id.*
>
> However, in this case the internal affairs investigator reported that the videotape shows an exchange between Mr. Shroyer and his mother. Furthermore, the offender in *Piggie* knew what was being taped during the extraction-he was-so therefore no security concerns were at stake. *Id.* at 679. By contrast, the State asserts that allowing Mr. Shroyer to view the videotape of the visiting room would compromise institutional security. Therefore, it was not error to deny Mr. Shroyer access to the videotape.

*Shroyer*, 80 Fed. Appx. at 484.

This court has attempted to conscientiously work through the requirements of the relevant law in this circuit with regard to the various aspects of disclosure first to the CAB and then possibly to the inmate the contents of surveillance videos.  When it is all said and done, this court remains convinced that as difficult as these demands are to follow, what happened here did not violate the sum total of the relevant law in this circuit such as it is.

A careful review of the entirety of this case fails to disclose a basis for that the petitioner has made a valid claim for relief under 28 U.S.C. §2254.  Such relief is now **DENIED.  IT IS SO ORDERED**.

  DATED:  October 16, 2006

                                         S/ ALLEN SHARP
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**